**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON SALEM DIVISION**

| | |
|---|---|
| **CLIVE PONTUSSON, on behalf of himself and all others similarly situated,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**SANTA FE NATURAL TOBACCO COMPANY, INC., REYNOLDS AMERICAN INC., and R.J. REYNOLDS TOBACCO COMPANY,**<br><br>    **Defendants.** | Case Number:_____<br><br><br>Class Action Complaint |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Clive Pontusson, as and for his class action complaint, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

<u>**NATURE OF THE CASE**</u>

1.      This action seeks to redress Defendants Santa Fe Natural Tobacco Company, Inc. ("SFNT"), Reynolds American Inc. ("Reynolds") and R.J. Reynolds Tobacco Company's ("RJR," collectively, "Defendants") deceptive marketing of their "Natural American Spirit" brand cigarettes as "Natural" and "Additive-Free."

2.      The history of tobacco marketing is replete with deception. First, tobacco companies, including Reynolds' predecessors, told the American people that smoking actually improved health. When that claim became untenable, tobacco companies told the American

people that adding filters would make smoking safe. When that claim became untenable, tobacco companies told the American people that smoking low tar or light cigarettes were safer, until they were prohibited from doing so.

3. The growing popularity and sales of Natural American Spirit, the brand owned and controlled by Reynolds, represents the latest chapter in tobacco companies' attempt to deceive American consumers into thinking that there are ways to reduce the dangers of smoking if only the smoker smokes a certain brand of cigarette.

4. By uniformly using the terms "Natural" and "Additive-Free" on each and every label, Defendants intentionally and successfully convey to reasonable consumers that Natural American Spirit cigarettes are safer and healthier to smoke than other competing cigarettes. But smoking any cigarette is dangerous and hazardous to health, and there is no safe cigarette commercially available within the United States.

5. Defendants reinforce these misleading labeling claims by prominently using the terms "Natural" and "Additive-Free" through a pervasive nationwide marketing and advertising campaign. This campaign perpetuates the false impression that Natural American Spirit is a safer, healthier cigarette.

6. This misleading message is further reinforced through the use of the term "Organic" on many of the labels and advertisements. In addition, extensive use of Native American imagery in advertisements and on all labels of Natural American Spirit cigarettes reinforces the naturalness impressions of the labels.

7. This misleading message is also reinforced by the numerous environmental claims made by Defendants' packaging and advertising. The backs of all Natural American Spirit

packages prominently state "RESPECT FOR THE EARTH™" next to an image of three feathers or leaves that closely resemble the well-known triple-arrow symbol for recycling. Certain packages make additional recycling and environmental claims including "Pack Recycling," "Earth-Friendly Tobacco," "Supporting Farmers," "U.S. Grown Tobacco," and "Reducing Butt Litter."

8. Natural American Spirit cigarettes are not healthier or safer than other cigarettes.

9. Compared to other major brands, Natural American Spirit cigarettes have substantially higher levels of certain known carcinogens and heavy metals. Natural American Spirit cigarettes also release exceedingly high levels of "free-base" nicotine, which makes them at least as addictive as other cigarettes.

10. This suit is brought pursuant to the consumer protection statutes of the state of Washington and the common law on behalf of a class of consumers who purchased Natural American Spirit cigarettes. This suit seeks, *inter alia*, actual damages and refunds, statutory and punitive damages, injunctive relief, restitution, attorneys' fees, and the costs of this suit.

## PARTIES

11. Plaintiff Clive Pontusson is a citizen of the State of Washington with residence in Thurston County. During the proposed class period, Mr. Pontusson viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free." Mr. Pontusson regularly purchased varieties of Natural American Spirit cigarettes including purchases in the state of Washington. The Natural American Spirit cigarettes Mr. Pontusson purchased were all uniformly labeled as "Natural" and "Additive-Free," and he made those purchases at a price premium compared to other cigarettes because he

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 3 of 38

believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

12.     Defendant Santa Fe Natural Tobacco Company, Inc. is a New Mexico corporation whose principal place of business is in Santa Fe, New Mexico.

13.     Defendant Reynolds American Inc. is a North Carolina corporation whose principal place of business is in Winston-Salem, North Carolina.   SFNT is an operating subsidiary of Reynolds.

14.     Defendant R.J. Reynolds Tobacco Company is a North Carolina corporation whose principal place of business is in Winston-Salem, North Carolina.   Like SFNT, RJR is an operating subsidiary of Reynolds.

15.     Reynolds and RJR are intimately involved in the marketing, advertising, and overall business development of Natural American Spirit cigarettes.

16.     Reynolds not only approves all decisions made by SFNT with respect to the marketing, design, and composition of Natural American Spirit cigarettes, but it plays a central role in developing Natural American Spirit's advertising.   For example, in addressing the recent Natural American Spirit advertising blitz, Reynolds issued a statement to Convenience Store News: "Reynolds has said the company believes the new cigarette and snus ads 'are in full compliance' with the Master Settlement Agreement.   'We review readership data and analyze the editorial content of the publications over time to be sure the topics covered have a predominant

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 4 of 38

adult appeal and focus, and only advertise in magazines that have adult readership of 85 percent or higher,' RAI said in a statement to the news outlet."[1]

17.     RJR has service agreements with SFNT and other Reynolds subsidiaries, which according to Reynolds, enables an "integrated" system where the executives from Reynolds and RJR "collaborate to develop, coordinate, and execute programs to achieve company-wide goals and targets, and guidelines through which initiatives are reviewed and approved."[2]

18.     In effect since at least 2010, the RJR-SFNT service agreement provides for various functions that RJR performs for SFNT.  These include consulting on market research and planning, consumer engagement, and research and development.

19.     RJR employees consult with SFNT on, among other things, brand equity research studies, consumer perception studies, consumer concept studies, and direct mail advertising.

20.     SFNT uses RJR's Standard Operating Procedures – an 800-page document – on consumer engagement.  RJR employees consult with SFNT on that as well.

21.     RJR employees also assist SFNT in managing SFNT's smoker database.

22.     Reynolds' financial strength depends, in part, on SFNT's financial strength and Reynolds exercises control over SFNT's corporate decision-making.

23.     Reynolds considers SFNT an operating segment: SFNT's assets are Reynolds' assets.   Reynolds essentially controls the financial operations of SFNT, including SFNT's

---

[1] *National Ad Campaign Promotes RAI's Natural American Spirit*, CONVENIENCE STORE NEWS (July 14, 2015), http://www.csnews.com/product-categories/tobacco/national-ad-campaign-promotes-rais-natural-american-spirit (last visited July 3, 2018).

[2] Supplier Guide: Reynolds American Inc. and its subsidiaries, *available at* http://sustainability.reynoldsamerican.com/documents/Supplier_Guide.pdf (last visited July 3, 2018).

business initiatives and capital expenditures. SFNT employees are considered Reynolds' employees; board members between SFNT and Reynolds overlap; Reynolds controls pricing for its subsidiaries; Reynolds owns its operating subsidiaries' executive offices and manufacturing facilities; Reynolds reports SFNT's financial statements in its SEC filings; and Reynolds requires SFNT to make capital investments to support other Reynolds' brands such as VUSE.

24.     Reynolds' involvement and control over SFNT's advertising is exhibited in Reynolds response to the Food and Drug Administration's (the "FDA") August 27, 2015 Warning Letter concerning the advertising of Natural American Spirit cigarettes. Mitchell A. Neuhauser, Vice President and Assistant General Counsel for Reynolds, responded to the FDA on September 18, 2015 on SFNT's behalf. Mr. Neuhauser also requested an in-person meeting with the FDA for mid-November. Mr. Neuhauser designated various Reynolds and Reynolds' affiliated representatives to address the issues raised in the Warning Letter. None of the designated representatives were from SFNT. All proposed attendees were instead from Reynolds or RJR. Accordingly, the November 2015 meeting, and upon information and belief, all subsequent FDA interaction regarding Natural American Spirit labeling and advertising, only included Reynolds and RJR representatives.

## JURISDICTION AND VENUE

25.     This court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, and there is minimal diversity of citizenship between Plaintiff and proposed class members, and Defendants.

26.     This Court has personal jurisdiction over Defendants. Reynolds and RJR are citizens of North Carolina and have their principal places of business in Winston Salem, North

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 6 of 38

Carolina. SFNT is authorized to do business and, in fact, does business in the Middle District of North Carolina and has sufficient minimum contacts with this District. Each Defendant otherwise intentionally avails itself of the markets in this state through the promotion, marketing, and sale of Natural American Spirits to render the exercise of jurisdiction by this Court permissible under North Carolina law and the U.S. Constitution.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein, including the dissemination of false and misleading information regarding Natural American Spirit cigarettes, occurred within this District, and because Reynolds and RJR are headquartered in this District.

## FACTUAL ALLEGATIONS

**A.     Defendants Prominently Label Natural American Spirit
Cigarettes With "Natural" And "Additive-Free" Representations.**

28.     Defendants sell Natural American Spirit cigarettes in differently-colored packs, all of which Defendants uniformly and prominently label and advertise with representations that the cigarettes are "Natural" and "100% Additive-Free."



Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 7 of 38



29.     The primary differentiators of Natural American Spirit cigarettes from other cigarettes are Defendants' claims that they are "Natural" and "Additive-Free."

**B.      Defendants Reinforce The "Natural" and "Additive-Free" Label Claims With A Uniform And Pervasive Marketing Campaign.**

30.     Defendants' advertising for Natural American Spirit cigarettes has been replete with the uniform representations that cigarettes are "Natural" and "100% Additive-Free."

31.     A collection of Defendants' print advertisements for Natural American Spirit cigarettes shows Defendants' prominent and uniform use of the central message of the claims that the cigarettes are "Natural" and "Additive-Free":

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 8 of 38

## 2015



Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 9 of 38

# 2015



Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 10 of 38

**2013**



Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 11 of 38

**2013**





32.    "Natural" and "Additive-Free" advertising claims have been used by SFNT throughout the history of the company.  In 2015, for example, Defendants launched a nationwide ad campaign targeting such popular magazines as Sports Illustrated, Time, Field and Stream, Southern Living, Architectural Digest, Vanity Fair and US Weekly.   As Seth Moskowitz, a spokesman for SFNT, explained: "The aim is to drive brand awareness, highlight Natural

American Spirit's 100-percent additive-free natural tobacco proposition, and generate trial among adult smokers."

33. This marketing approach has been wildly successful for Defendants.

a. Sales of Natural American Spirit cigarettes increased by 86% from 2009 to 2014, compared to an overall 17% decline in cigarette sales in the United States over the same time period.

b. Natural American Spirit's share of market more than doubled between 2010 and 2015.

c. Natural American Spirit saw a 21.4% increase in sales volume from 2014 to 2015, selling 900 million more cigarettes in 2015 than in 2014 for a total of 4.8 billion cigarettes sold. It had grown 10% between 2013 and 2014, i.e., it more than doubled its previous year's growth.

d. Reynolds recently sold the international rights to the Natural American Spirit brand name and trademarks for $5 billion.

34. The advertising and marketing campaign for the Natural American Spirit cigarettes is systematic and pervasive such that Defendants ensured that all consumers purchasing the cigarettes were exposed to the "Natural" and "Additive-Free" representations.

## C. Defendants' Mislead Reasonable Consumers Into Believing That Natural American Spirit Cigarettes Are Less Harmful Than Other Cigarettes.

35. Tobacco companies, led by Reynolds, have long sought to sell cigarettes by promising safer and healthier smoking options. First tobacco companies touted the use of filters as a safer and healthier alternative, and then it was "low tar" or "light" cigarettes. Indeed, the

holy grail of tobacco companies is the creation and marketing of a cigarette that the public believes is safer and healthier.

36.     Capitalizing on the growing desire of American consumers to use products that are natural and not filled with additives, Reynolds and SFNT have deliberately and misleadingly built their brand around their "Natural" and "Additive-Free" claims in order to deceive consumers into thinking that their cigarettes are safer or healthier than other cigarettes.

37.     The claims "Natural" and "Additive-free" connote safer and healthier cigarettes because consumers associate smoking cigarettes with non-natural additives as being dangerous and unhealthy.  Indeed, research demonstrates that consumers believe that Natural American Spirit cigarettes are safer, healthier and less harmful to smoke because they purport to be "Natural" and "Additive-Free."

38.     As one study conducted by researchers at the University of California found, "[t]he idea that cigarettes are natural may also help smokers down-play the risks of smoking, as 'natural' risks inspire less concern that unnatural ones . . . smokers  . . . frequently concluded that 'natural' cigarettes must be healthier or safer than cigarettes containing chemicals . . ."[3]

39.     The study's authors concluded that "[t]he tobacco industry is adept at easing smokers' health concerns through such product modifications as filters and (seemingly) reduced

---

[3] McDaniel, Patricia A. & Ruth E. Malone, *"I Always Thought They Were All Pure Tobacco": American Smokers' Perceptions of "Natural" Cigarettes and Tobacco Industry Advertising Strategies*, 16 Tobacco Control e7 (2007), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2807204/ (last visited July 3, 2018).

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 15 of 38

tar.  American tobacco companies have understood, for decades, that 'natural' is similarly misleading and implies unwarranted health claims."[4]

40.    Other studies confirm that consumers believe that additive-free cigarettes are safer and healthier than other cigarettes.  For example, in a survey of more than 1000 smokers in the United States, 60% thought that removing additives made a cigarette less dangerous to smoke, and 73% believe that cigarettes with additives were more harmful than those that did not have the additives.[5]

41.    Reynolds has long known and understood that marketing any cigarette as "Additive-free" would "reduce the perceived primary health concern" involved in smoking.[6]  In fact, in the 1990s, Reynolds regarded a natural version of Winston as appealing to "concerned smokers" worried about "ingredients, yield, risk factors."[7]

42.    Expecting that regulators would express concern over marketing an additive-free cigarette (because it implies untruthful health claims), Reynolds conducted marketing studies to show that people do not think that "Additive-Free" means safer or healthier (so it could deflect regulators' attention).  But the result was not what Reynolds expected; to the contrary, the research showed that even when answering leading and biased questions designed to elicit

---

[4] *Id.*

[5] Cummings, K.M., et al., "Are smokers adequately informed about the health risks of smoking and medicinal nicotine?" *Nicotine & Tobacco Research* 6(3): S333-340, 2004.

[6] Memorandum from T.C. Hayes & W.J. Moore (July 22, 1983), *available at* http://legacy.library.ucsf.edu/tid/siz55f00 (last visited July 3, 2018).

[7] RJ Reynolds Segmentation/Positioning Memorandum (Apr. 21, 1995), *available at* http://legacy.library.ucsf.edu/tid/hjw66d00 (last visited July 3, 2018).

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 16 of 38

responses showing consumers do not think additive free is safer or healthier, consumers believed that additive-free cigarettes were safer or healthier.[8]

43.    The deceptive nature of Defendants' claims is further confirmed by a 2006 ruling by United States District Court Judge for the District of Columbia Judge Gladys Kessler.  *See United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006).  The Department of Justice brought a RICO action against numerous tobacco companies, including predecessor companies and subsidiaries of Defendant Reynolds, relating to the use of deceptive brand descriptors, such as "natural," "light" and "mild."  Following a bench trial, Judge Kessler issued a 1,652 page decision which found, among other things, that the defendants' use of the brand descriptor "natural" misleadingly conveyed to consumers that the cigarettes were less hazardous to health.  Judge Kessler specifically found that defendant Brown & Williamson, which Reynolds' predecessor R.J. Reynolds Tobacco Holdings, Inc. acquired in 2005, developed "natural" branded cigarettes with knowledge that "market research show[s] that consumers incorrectly interpret the word 'natural' to mean that the cigarettes are safer and healthier than conventional cigarettes . . ."  *Id.* at 924.  As a result of these findings, Judge Kessler enjoined the defendants from using the brand descriptor "natural."  Judge Kessler's ruling was affirmed by the United States Court of Appeals, District of Columbia Circuit.  *United States v. Philip Morris USA Inc.*, 556 F.3d 1095, 1150 (D.C. Cir. 2009).

44.    The FDA agrees that labeling Natural American Spirit cigarettes as "Natural" and "Additive-Free" conveys to reasonable consumers that Defendants' cigarettes are safer and healthier than the alternative.  On August 27, 2015, the FDA sent a Warning Letter to SFNT

---

[8] Cummings at 6.

declaring that several of its cigarette products are "adulterated" under section 902(8) of the FD&C Act, 21 U.S.C. § 387b(8), and unapproved "modified risk tobacco products" under section 911(g) of the FD&C Act, 21 U.S.C. § 387k(g).  The FDA concluded that:

> Your product labeling for Natural American Spirit cigarettes, which uses the descriptors "Natural" and "Additive Free," represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products.

## D.  Natural American Spirit Cigarettes Are Not Safer Or Less Harmful Than Other Cigarettes.

45.    Natural American Spirit cigarettes are not safer or healthier than other cigarettes, a truth that Defendants do not deny.  Nor can they.

46.    There is no scientific support for the claim that Natural American Spirit cigarettes are safer or healthier.[9]

47.    In fact, research suggests that Natural American Spirit cigarettes contain more harmful ingredients or substances than other cigarettes.  In one 2015 study, scientists from the Center for Tobacco Products and the Tobacco and Volatiles Branch of the Centers for Disease Control and Prevention examined polycyclic aromatic hydrocarbons (PAHs), a class of known carcinogenic compounds in cigarette smoke.  PAHs do not occur naturally in the tobacco plant; rather, they are formed during the smoking process.  Of the 50 mainstream U.S. cigarettes tested, the Natural American Spirit cigarettes from the blue box had the highest total PAH yields.  These

---

[9] FDA Warning Letter to Santa Fe Natural Tobacco Company, Inc. (Aug. 27, 2015), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm459778.htm (last visited July 3, 2018).

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 18 of 38

cigarettes delivered from 60% to 170% higher PAH yields that the average PAH yields of all cigarettes analyzed.[10]

48.     Natural American Spirit cigarettes also contain more heavy metals than other cigarettes.  Researchers from the Centers for Disease Control and Prevention recently tested 50 varieties of cigarettes available in the United States.  They concluded that Natural American Spirit cigarettes "had the highest mean concentrations for cadmium and mercury."[11]  Cadmium is not only a known carcinogen; it is also associated with chronic obstructive pulmonary disease and nephrotoxicity.[12]  Mercury causes a wide array of well-known deleterious health effects.

49.     The danger and health effects of any cigarette are also determined by the extent to which it is addictive.  The more people smoke, the greater the risk of health harms like cancer and emphysema.  Defendants intentionally engineered Natural American Spirit cigarettes to be at least as addictive as other cigarettes by creating "free-base" nicotine.

50.     Nicotine occurs naturally in tobacco plants as either an acid or a base.  The acidic form is more stable, and therefore more concentrated. The basic form, known as "free-base" nicotine, is volatile, especially when smoked.  As a result, it is absorbed quickly and efficiently into the lungs when a person smokes, where it quickly reaches the brain. Acidic nicotine, conversely, clings to the particles of smoke as they settle into the lungs, and is slowly absorbed

---

[10] An T. Vu et al., "Polycyclic Aromatic Hydrocarbons in the Mainstream Smoke of Popular U.S. Cigarettes," National Center for Biotechnological Information (July 30, 2015) *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4540633/ (last visited July 2, 2018).

[11] Mark R. Fresquez, R. Steven Pappas, and Clifford H. Watson, "Establishment of Toxic Metal Reference Range in Tobacco from U.S. Cigarettes,"  J. Anal Toxicol. 2013 Jun; 37(5): 298–304.

[12] *Id.*

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 19 of 38

before it is transported to the brain. The difference between free-base and naturally occurring nicotine is analogous to the difference between powder and crack cocaine.

51. Defendants manipulate the design and manufacture of the cigarettes to maximize the amount of free-base nicotine.

52. James Pankow of Oregon Health and Science University in Portland compared the levels of free-base nicotine found in the most common brands of American cigarettes. Natural American Spirit cigarettes contained the most free-base form of nicotine: 36 percent free-base nicotine, compared with 9.6 percent in a Marlboro, 2.7 percent in a Camel, and 6.2 percent in a Winston.[13] These high levels of free-base nicotine do not occur naturally; instead, Defendants engineer their so-called natural cigarette to boost free-base nicotine.

**E.      Defendants Use Of The Term "Natural" Is Deceptive.**

53. Defendants proclaim on every package of Natural American Spirit cigarettes that they are "Natural." Defendants reinforce this concept through advertisements like "Tobacco + Water," tobacco leafs covered in drops of dew or rain and Native American imagery, i.e. the Natural American Spirit smoker is smoking what Native Americans are thought to have smoked hundreds of years ago.

54. The Natural American Spirit cigarette is anything but "Natural." Defendants subject the tobacco in Natural American Spirit cigarettes to various complex, highly technical and unnatural engineering processes, rendering this representation false and misleading.

---

[13] Pankow, J., Barsanti, K., & Peyton, D. "Fraction of Free-Base Nicotine in Fresh Smoke Particulate Matter from the Eclipse Cigarette by 1H NMR Spectroscopy." *Chem. Res. in Toxicology* 16(1): 23-27 (2003).

55.     For example, the tobacco in Natural American Spirit cigarettes is flue-cured.  This is a technical process where the tobacco is heated to unnaturally seal in sugars and thereby artificially lower the pH of the cigarette smoke.  In its natural state, tobacco has a high pH content, which makes inhalation too harsh.  By lowering the pH, the cigarette becomes inhalable.[14]

56.     The tobacco in Natural American Spirit cigarettes is also artificially blended.

57.     The flue-curing, blending and other engineering processes are no different than that of other cigarettes, yet Defendant's use of the word "Natural" deceives Natural American Spirit smokers into thinking that they are different.

58.     Reasonable consumers, including Plaintiff and the class members, value natural products for important reasons, including the belief that they are safer and healthier than alternative cigarettes that are not represented as being natural.

59.     Whether Defendants' labeling of the cigarettes as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person.

60.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

---

[14] "Tobacco smoke was rarely inhaled prior to the nineteenth century; it was too harsh, too alkaline.  Smoke first became inhalable with the invention of *flue curing*, a technique by which the tobacco leaf is heated during fermentation, preserving the sugars naturally present in the unprocessed leaf.  Sugars when they burn produce acids, which lower the pH of the resulting smoke, making it less harsh, more inhalable.  There is a certain irony here, since these 'milder' cigarettes were actually far more deadly, allowing smoke to be drawn deep into the lungs."  Robert N. Proctor, "Why ban the sale of cigarettes? The case for abolition," Tobacco Control (Jan. 17, 2013), *available at* http://tobaccocontrol.bmj.com/content/22/suppl_1/i27.full (last visited July 3, 2018) (emphasis in original).

61.     Defendants failed to disclose that the cigarettes are not, in fact, natural, and have thus violated the law as described below.

62.     The marketing of the Natural American Spirit as "Natural" in a prominent location on the labels of Natural American Spirit evidences Defendants' awareness that "Natural" claims are material to consumers.

63.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

64.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the class members.

65.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

66.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the class members in that they:

       a.     Paid a sum of money for Natural American Spirit cigarettes that were not "Natural" and "Additive-Free" as Defendants represented;

       b.     Paid a premium price for Natural American Spirit cigarettes that were not "Natural" and "Additive-Free" as Defendants represented;

       c.     Were deprived of the benefit of the bargain because the Natural American Spirit cigarettes they purchased were different from

what Defendants warranted;

d.     Were deprived of the benefit of the bargain because the Natural American Spirit cigarettes they purchased had less value than what Defendants represented;

e.     Ingested a substance that was of a different quality than what Defendants promised; and

f.     Were denied the benefit of the beneficial properties of the natural cigarettes Defendants promised.

67. Had Defendants not made these false, misleading, and deceptive representations and omissions, Plaintiff and the class members would not have been willing to pay the same amount for the Natural American Spirit cigarettes they purchased.

68. Plaintiff and the class members paid for Natural American Spirit cigarettes that were "Natural" and "Additive-Free" but received Natural American Spirit cigarettes that were not natural or, in the case of menthols, free of additives. The Natural American Spirit cigarettes Plaintiff and the class members received were worth less than the Natural American Spirit cigarettes for which they paid.

69. Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Natural American Spirit cigarettes over the cost of competitive products not bearing a "Natural" label.

70. Plaintiff and the class members all paid money for the Natural American Spirit cigarettes. However, Plaintiff and the class members did not obtain the full value of the advertised Natural American Spirit cigarettes due to Defendants' misrepresentations and omissions. Plaintiff and the class members purchased, purchased more of, and/or paid more for, Natural American Spirit cigarettes than they would have had they known the truth.

Consequently, Plaintiff and the class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

**F.      Defendants Are Able To And Do Charge A Price
Premium For Natural American Spirit Cigarettes Because
Consumers Believe That They Are Less Harmful Than Other Cigarettes.**

71.      Defendants can and do charge a price premium for Natural American Spirit cigarettes because consumers believe that they are healthier and safer.  As a result, Natural American Spirit is the most expensive of the major brands.

72.      As Reynolds proudly informs its shareholders:

> Santa Fe competes in the U.S. cigarette market with its NATURAL AMERICAN SPIRIT brand, which is the fastest growing super-premium cigarette brand and is a top 10 best-selling cigarette brand. It is priced higher than most other competitive brands, and is differentiated from key competitors through its use of all natural, additive-free tobacco, including styles made with organic tobacco.[15]

73.      Defendants' deceptive marketing of Natural American Spirit cigarettes has helped the brand increase sales by 86 percent from 2009 to 2014, even as overall cigarette sales in the United States fell by 17 percent during the same period.[16]

---

[15] Reynolds American, Inc. Form 10-Q United States Securities and Exchange Commission Filing for the Quarterly Period Ended March 31, 2016 (Apr. 26, 2016) *available at* http://s2.q4cdn.com/129460998/files/doc_financials/2016/RAI-Q116-10-Q.pdf (last visited July 3, 2018).

[16] Matthew L. Meyers, "FDA Warning About Deceptive Marketing of Natural American Spirit Cigarettes, Other Brands Is Critically Important to Protect Consumers," PRNewswire-USNewswire (Aug. 27, 2015), *available at* http://www.prnewswire.com/news-releases/fda-warning-about-deceptive-marketing-of-natural-american-spirit-cigarettes-other-brands-is-critically-important-to-protect-consumers-300134309.html (last visited July 3, 2018).

**G. Defendants' Deceptive Claims Are Intentional And Willful.**

74. Based on decades of market research and experience, Defendants know full well that consumers understand and believe from the prominent and central use of the terms "Natural" and "Additive-Free" that Natural American Spirit cigarettes are safer and healthier than other cigarettes. Indeed, Defendants intentionally capitalize on consumers' hope for a healthy life by selling "Natural" and additive-free cigarettes and charging a handsome premium accordingly.

75. Defendants also know full well that their cigarettes are no safer or healthier than any other cigarette. In fact, Defendants intentionally engineer Natural American Spirit cigarettes to be at least as addictive as other cigarettes so that they can ensure a captive and profitable market for their cigarettes, notwithstanding that they know consumers will die as a result.

76. Defendants' use of an unfair and deceptive scheme to prioritize their profits at the expense of consumers demonstrates that they acted with intentional and willful intent to the disregard of the health and safety of others.

77. Defendants' violations present a continuing risk to Plaintiff and the Class, as well as to the general public, not only because consumers are overpaying for goods as a direct result of Defendants' deceptive and unfair acts and omissions, but because Defendants' acts and omission have a direct and deleterious effect on public health. Defendants' unlawful acts and practices complained of herein affect the public interest.

78. Plaintiff and the Class seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, and in bad faith. Defendants willfully misrepresented the ingredients and nature of Natural American Spirit cigarettes, deceived class members on matters involving a substantial risk of adverse health effects, and

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 25 of 38

concealed material facts that only they knew, all to reap profits by portraying Natural American Spirit cigarettes as a healthy or less harmful cigarette and also by making the literally false claims that the cigarettes are "Natural" and "Additive-Free."  Defendants' malicious, willful, reckless, wanton, and bad faith conduct warrants punitive damages.

## TOLLING

### H.     Plaintiff Is Entitled To Equitable Tolling Under The Discovery Rule.

79.     Class members had no way of knowing about the deceptive practices complained of herein.

80.     At no time could Plaintiff and the other class members have discovered through the exercise of reasonable diligence that Defendants were concealing and misrepresenting the true quality and nature of Natural American Spirit cigarettes.

81.     Plaintiff and the other class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants' Natural American Spirit cigarettes are not safer or healthier than other cigarettes.

82.      Plaintiff and other class members also did not discover, and did not know facts that would have caused a reasonable person to suspect, that Defendants' Natural American Spirit cigarettes did contain additives and were manufactured using non-natural ingredients or processes.

83.     All applicable statutes of limitation have been tolled by operation of the discovery rule.

**I.    Plaintiff Is Entitled To Equitable Tolling
Because Of Defendants' Fraudulent Concealment.**

84.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

85.    Instead of adequately disclosing that Natural American Spirit cigarettes are no safer or healthier than other cigarettes, Defendants falsely represented that their cigarettes were, among other things, "Natural," and "Additive-Free."

**J.    Defendants Are Estopped From Relying On Any Statutes Of Limitations Defense.**

86.    Defendants are, and at all relevant times have been, under a continuous duty to disclose to Plaintiff and the other class members the true character, quality, and nature of Natural American Spirit cigarettes.

87.    Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of Natural American Spirit cigarettes from consumers.

88.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

89.    Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Clive Pontusson brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in Washington (the "Washington Class").

90. Excluded from the Washington Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the Judge to whom this case is assigned and any member of the Judge's immediate family.

91. <u>Numerosity.</u> The Washington Class consists of many thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

92. <u>Commonality.</u> There are questions of law or fact common to the Washington Class that predominate over any questions affecting only individual members, including:

      i.      whether Defendants violated state consumer protection laws*;*

      ii.      whether Defendants engaged in deceptive or misleading acts or practices by labeling Natural American Spirit cigarettes as "Natural" and "Additive-Free";

      iii.      whether Plaintiff and members of the Washington Class paid a price premium for Natural American Spirit cigarettes because they are labeled as "Natural" and "Additive-Free";

      iv.      whether Natural American Spirit cigarettes are in fact "Additive-Free";

      v.      whether Defendants are being unjustly enriched by their deceptive or misleading acts or practices;

      vi.      whether Plaintiff and the Washington Class have sustained damages and, if so, the proper measure thereof;

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 28 of 38

> vii.     whether Plaintiff and the Washington Class are entitled to restitution, and if so, the proper measure thereof; and
>
> viii.     whether Defendants should be enjoined from continuing to sell Natural American Spirit cigarettes as currently labeled;

93.     <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Washington Class.  Plaintiff suffered the same injury as members of the Washington Class -- i.e., Plaintiff purchased Natural American Spirit cigarettes after seeing Defendants' misleading representations about the quality and nature of those products and paid more money than he otherwise would have as a direct result of Defendants' deceptive labeling.

94.     <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Washington Class.  Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Washington Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Washington Class.

95.     <u>Predominance</u>.  Defendants have engaged in a common course of conduct toward Plaintiff and members of the Washington Class.  The common issues arising from this conduct that affect Plaintiff and class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

96.     <u>Superiority.</u>  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i. Absent a class action, class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii. It would be a substantial hardship for most individual members of the Washington Class if they were forced to prosecute individual actions;

iii. Once the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Washington Class;

iv. A class action will permit an orderly and expeditious administration of the Washington Class's claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

v. The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi. Defendants have acted on grounds generally applicable to members of the Washington Class, making class-wide relief appropriate.

97. <u>Injunctive and Declaratory Relief Appropriate</u>. A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to members of the Washington Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to all members of the Washington Class.

Case 1:18-cv-00594-LCB-LPA   Document 1   Filed 07/06/18   Page 30 of 38

## CAUSES OF ACTION

### COUNT I
### (Violation Of The Washington Consumer Protection Act,
### Wash. Rev. Code Ann. §§ 19.86.010, *et seq.* On Behalf Of The Washington Class)

98.     Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

99.     Plaintiff brings this action on behalf of himself and the Washington Class against all Defendants.

100.    The Washington Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020.

101.    Plaintiff and Washington Class Members are "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).   Plaintiff and Washington Class Members each purchased one or more packs of Natural American Spirit cigarettes.

102.    Defendants are also "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).

103.    Defendants have violated the Consumer Protection Act by knowingly and intentionally engaging in the untrue, deceptive, and misleading practices described herein, which are unconscionable and which offend public policy and which are immoral, unethical, unscrupulous and substantially injurious to consumers.

104.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

105.   Defendants intentionally and knowingly misrepresented material facts regarding Natural American Spirit cigarettes with intent to mislead the Washington Plaintiff and Washington Class Members.

106.   Defendants knew or should have known that their conduct violated the Consumer Protection Act.

107.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Washington Class Members, into believing that Natural American Spirit cigarettes were somehow safer, healthier or less harmful than other cigarettes and that they contained no additives and failed to adequately inform the Plaintiff and Washington Class Members that these cigarettes contain additives, provide no benefits and are just as dangerous as regular cigarettes.

108.   Defendants unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including Plaintiff and Washington Class Members, into believing that Natural American Spirit cigarettes were a safer, healthier or less harmful alternative to other cigarettes and that they contained no additives. Defendants intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving Plaintiff and Washington Class Members.

109.   Defendants' violations present a continuing risk to Plaintiff and Washington Class Members, as well as to the general public who risk irreparable injury as a result of Defendants' acts and omissions in violation of the Consumer Protection Act.  Defendants' unlawful acts and practices complained of herein affect the public interest.

110.    Plaintiff and Washington Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.  Plaintiff and Washington Class Members who purchased Natural American Spirit cigarettes would not have purchased those cigarettes, or alternatively, would have paid less for them.

111.    As a direct and proximate result of Defendants' violations of the Consumer Protection Act, Plaintiff and Washington Class Members have suffered injury-in-fact and/or actual damage.

112.    Plaintiff and Washington Class Members are entitled to recover three times actual damages, attorneys' fees, costs and other relief under Wash. Rev. Code Ann. § 19.86.090.

113.    Plaintiff and Washington Class Members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, and any other just and proper relief available under the Consumer Protection Act.

## COUNT II
### (Unjust Enrichment On Behalf Of The Washington Class)

114.    Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

115.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Washington Class Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to Plaintiff and Washington Class Members, and caused Plaintiff and Washington Class Members to lose money as a result thereof.

116.    Plaintiff and Washington Class Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  Plaintiff and Washington Class Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

117.    Defendants have received and retained unjust benefits from Plaintiff and Washington Class Members, and inequity has resulted.

118.    It is inequitable and unconscionable for Defendants to retain these benefits.

119.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct. As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned Plaintiff and Washington Class Members, in an amount to be proven at trial.

THEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other class members, respectfully requests that the Court enter judgment against Defendants as follows:

A.    Certifying this action as a class action, with the Washington Class as defined above;

B.    Requiring that Defendants pay for notifying the class members of the pendency of this suit;

C.    Awarding Plaintiff and the Washington Class injunctive relief;

D.    Awarding Plaintiff and the Washington Class monetary damages in an amount to be determined at trial, together with prejudgment interest;

E.  Awarding Plaintiff and the Washington Class statutory damages in the maximum amount provided by law;

F.  Awarding Plaintiff and the Washington Class restitution of Defendants' ill-gotten gains;

G.  Awarding Plaintiff and the other class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.  For any further relief that the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims in this action.

Dated: July 6, 2018                          Respectfully submitted,

_s/Joel R. Rhine_____
**RHINE LAW FIRM, PC**
Joel R. Rhine
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062
jrr@rhinelawfirm.com

**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger
Jonathan R. Gdanski
Jeffrey L. Haberman
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
scott@schlesingerlaw.com
jgdanski@schlesingerlaw.com
jhaberman@schlesingerlaw.com

**HALUNEN LAW**
Melissa Wolchansky
Amy E. Boyle

1650 IDS Center 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
boyle@halunenlaw.com
**ZIMMERMAN REED, LLP**
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90254
Telephone: (877) 500-8780
caleb.marker@zimmreed.com
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (800) 493-2827
hart.robinovitch@zimmreed.com

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
8120 Woodmont Avenue - Suite 810
Bethesda, Maryland 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

**TURK & STRAUSS LLP**
Samuel J. Strauss
613 Williamson Street, #201
Madison, WI 53703
Telephone: 608-237-1775
Facsimile: 608-509-4423
sam@turkestrauss.com

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship
445 Hamilton Avenue - Suite 605
White Plains, New York 10605
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
gblankinship@fbfglaw.com
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com

**PEARSON, SIMON & WARSHAW, LLP**
Daniel L. Warshaw
Alexander R. Safyan
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com
asafyan@pswlaw.com

**SEARCY, DENNEY, SCAROLA,
BARNHART & SHIPLEY, P.A.**
James W. Gustafson
517 N. Calhoun St.
Tallahassee, FL 32301
Tel: (850) 224-7600
Facsimile: (561) 383-9454
jwg@searcylaw.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

**LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY &
PROCTOR, P.A.**
Matthew D. Schultz
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-7141
mschultz@levinlaw.com

**LAW OFFICES OF
RONALD A. MARRON**
Ronald A. Marron
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006

Facsimile: (619) 564-6665
ron@consumersadvocates.com

***Counsel for Plaintiff
and the Putative Class***